IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lynx Services Ltd.,                            Case No. 3:14CV01967

           Plaintiff,

          v.                                        **ORDER**

Robert T. Horstman, et al.,

           Defendants.

In this suit, plaintiff Lynx Services Ltd. (Lynx) contends the defendants, Robert Horstman, Richard Horstman, and David Fanning, breached fiduciary duties owed to Lynx by unlawfully squeezing it out of its membership interest in an Ohio limited liability company, Ultimate Systems, LLC (Ultimate Systems).

Pending is a discovery dispute involving plaintiff's request for production of documents as to which the defendants have asserted a claim of attorney-client privilege. (Docs. 53, 59, 60).

For the reasons that follow, I find the claim of privilege not well taken and order the disclosure of the materials.

**Background**

The transaction that resulted in plaintiff's loss of membership interest was a pure asset sale between Accella Performance Materials, Inc. (Accella), the purchaser, and Ultimate Systems and Banbury International, the two selling companies at issue in this case. Accella acquired substantially all the assets of Ultimate Systems and Banbury International. Accella also received all the selling companies' corporate records, computers, and servers.

As part of discovery, plaintiff sought documents and correspondence from Accella, which is not a party to this litigation. Plaintiff's request for production included, *inter alia*, letters and emails as to which Robert Honigford, Ultimate System's in house legal counsel and Chief Financial Officer, was either the author or addressee, or had been copied. The parties to most of the communication were, like Honigford, Ultimate Systems employees.

The defendants bottom their claim of privilege on the contention that Honigford's involvement reflected his role as legal counsel, rather than his position as CFO.

Accella, which has not joined in the claim of privilege, has possession of the communications because of its asset purchase of Ultimate Systems.

## Discussion

The general standard for discovery allows a party to discover "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).

Under Ohio law, attorney-client privilege is governed by O.R.C. § 2317.02 and in cases not addressed by the statute, the common law. *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St. 3d 261, 264 (2005). Section 2317.02 prohibits an attorney from testifying "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client." O.R.C. § 2317.02(A)(1). Under the privilege:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by his legal advisor, (8) except the protection be waived.

*State ex rel. Leslie, supra,* 105 Ohio St. 3d at 265 (quoting *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998)).

2

Section 2317.021 extends the attorney-client privilege to corporations. O.R.C. § 2317.021(A). Thus, "corporate executives and managers, if endowed with appropriate authority by their employer, may on behalf of the corporation either assert or waive the attorney-client privilege." *Shaffer v. OhioHealth Corp.*, 2004 WL 35725, *3 (Ohio App.).

Plaintiff argues that defendants waived the attorney-client privilege by disclosing, *via* the assets sale and ensuing transfer of these communications, to Accella. As a result of that disclosure, the defendants waived the attorney-client privilege.[1]

If a client voluntarily discloses privileged communications to a third party, the client waives the privilege as to communications on the same subject matter. *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1080 (Ohio App. 2012) ("[A] client's voluntary disclosure of confidential communications is inconsistent with an assertion of the privilege."); *Hollingsworth v. Time Warner Cable*, 147 Ohio App. 3d 539, 559 (2004) ("The attorney-client privilege is waived where a client discloses communications with his or her attorney to a third party.").

In the context of corporate transactions, "where confidential attorney-client communications are transferred from a corporation selling assets to the corporation buying the assets, the [seller's] privilege is waived as to those communications." *In re In-Store Advertising Sec. Litig.* (*In re In-Store*), 163 F.R.D. 452, 458 (S.D.N.Y. 1995).

In *In re In-Store*, a third party, Valassis, produced documents it received as part of a transfer of assets from another company, Emarc. *Id.* There, the court concluded, "When those communications were transferred to Valassis in connection with a sale of assets by Emarc to Valassis, Emarc thereby waived any privilege as to those communications." *Id.* (citing *In re Grand*

---

[1] Accordingly, I need not address plaintiff's alternative arguments for disclosure.

*Jury Subpoenas 89-3 and 89-4*, 734 F. Supp. 1207, 1211 n.3 (E.D. Va. 1985) ("A transfer of assets, without more, is not sufficient to effect a transfer of the privileges; control of the entity possessing the privileges must also pass for the privileges to pass.")); *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98 104 (S.D.N.Y. 2008) ("If the transaction is nothing more than an asset transfer, the successor company does not acquire the former company's privilege.").

Here, the relevant transaction was an asset sale. Accella acquired substantially all of the assets of Ultimate Systems and Banbury International. Among those assets, as noted, were Ultimate Systems' corporate records, computers, and servers containing the email communications at issue. By transferring the email communications to Accella, the defendants voluntarily disclosed privileged information to a third party and, as a result, waived the attorney-client privilege as to those communications.

In response to, and in an effort to avoid the effect of the black letter doctrine as to the effect of unrestricted transfer, defendants argue the privilege followed the communications when they came into Accella's hands. Defendants claim to find support for their argument in *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D. Ohio 1993), in which the court held "'when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.'" The facts in *Guy* are, however, distinguishable from both *In re In-Store* and the present action.

In *Guy*, the relevant transaction involved an acquisition, as opposed to a pure asset sale. Unlike an asset sale, a merger or acquisition involves the transfer of control or management and, generally along with it, a transfer of the privilege. *Commodity Future Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1986) ("New managers installed as a result of a takeover, merger, loss of

4

confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors."). A mere transfer of assets, which, in contrast, does not involve a transfer of control or management, does not effect a transfer of the privilege. *Yosemite Inv., Inc. v. Floyd Bel, Inc.*, 943 F. Supp. 882, 883 (S.D. Ohio 1996) ("The general rule that the right to assert the attorney-client privilege does not change hands with the bare assignment of assets is based on the notion that the right to assert the attorney-client privilege is an incident of control of the corporation . . . .").

Further, even accepting defendants' misfocused argument that the communications remain privileged, they have no standing to assert the privilege. Only Accella has the authority to do so. *See, e.g., Commodity Future Trading Comm'n, supra,* 471 U.S. at 349 ("Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.").

## Conclusion

Accordingly, because defendants waived the attorney-client privilege as to the requested communications, I grant the discovery plaintiff seeks.

It is, therefore

ORDERED THAT defendants shall forthwith produce communications as to which they have made a claim of attorney-client privilege, and which they submitted for *in camera* review.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge